Case number 24-5234. Milton S. Hershey Medical Center et al. Appellants v. Robert F. Kennedy Jr. in his official capacity as Secretary of Health and Human Services. Mr. Connolly for the appellants. Ms. Chams for the appellants. Mr. Connolly, please proceed when you're ready. May it please the court, Ron Connolly for the appellant hospitals. I request a reserve two minutes for rebuttal. This is a straightforward case. The secretary violated the plain text of the statute, admitted that violation publicly in the Federal Register, and then promulgated a compliant rule retroactive to 2001. These actions compel him to recalculate hospitals' Medicare payments back to 2001. The reopening regulation states that the decision must be reopened if the secretary states the decision is inconsistent with the applicable law in the Federal Register. The secretary so stated that prior interpretation was inconsistent with the statutory requirements. This is a plain and straightforward application of the reopening regulation. Can I ask you if we don't, you'll resist this, but I'm just asking you to do it. If we don't look at the example and we only look at the text beforehand, do you have an argument? Well, yes, the text beforehand requires an explicit direction, and I think even even without the example, the statement in the Federal Register constitutes an explicit direction. Well, but it says by providing explicit direction to reopen. Explicit direction to reopen. Is there any way to read the rule as giving an explicit direction to reopen something that was Without without the example, I think that I mean, without the example, I think you can reasonably infer that the statements in the Federal Register clearly stating that the prior interpretation was contrary to the law, coupled with the Monmouth and Inouye Medicare reimbursement decisions, which concerned a prior regulation. But nonetheless, that reasoning applies here, that when there's an explicit acknowledgement that constitutes the direction to reopen. It's hard for me to see how it can be an explicit direction to reopen when the explicit direction actually is not to reopen, because that's what it seems like. Again, apart from the example, you've got the example. I'm not denying the example, but I'm just trying to understand contextually how to read the example. And if we take out the example, what the regulation says is CMS may direct to reopen by providing explicit direction to reopen. And the one thing it seems like the Federal Register notice says is, don't reopen. If it's already open, obviously fix it. But if it's closed, don't reopen that. Yeah, I think that I mean, I know you want to put the example to the side, but the example is a clear example of when there is a direction to reopen. And our case fits squarely within that example, which is virtually identical to the regulation unaffected when Monmouth and Medicare reimbursement. I guess what I'm going to say is, even putting aside that for mandamus purposes, you've got to be clearly right. And that's the only way to read it. The natural way to read an example, at least to try to read an example, is so that it can be reconciled with the thing of which it's supposed to be an example. And the thing of which this is supposed to be an example says, you will reopen when CMS directs you to reopen. And just, you didn't have the example. It's hard, very hard to see how the rule could be a direction to reopen when it actually directs the opposite. And then the question is, does the example go so far as to negate that all the way to the point that for mandamus purposes, it's absolutely clear that there was no alternative way to read it other than that you actually have to reopen even though you said not. The example is clear. The first part of the regulation says CMS may direct with an explicit direction. But the example says a decision must be reopened. So the example uses mandatory language. So here is an example of when CMS has exercised its discretion to order a reopening. CMS says that the prior determination was inconsistent with the applicable law. That example also discusses as those were understood at the time. And here the retroactive nature of the revised GME regulation is clear. Because CMS issued a retroactive rule which is primary retroactivity. It changes the past legal consequences of past actions. The rule that was in effect at the time is now the rule that was promulgated following the Hershey decision. But I thought as CMS understood those legal provisions at the time, I thought at the time actually CMS didn't have that understanding. That's the whole reason that you've got the subsequent questions about. Retroactivity is a powerful tool that CMS used here. And the meaning of retroactivity is that it changes the past legal consequences of past actions. That's what CMS did. CMS changed the rules that were in effect at the time. If you look at the revised GME regulation, it doesn't mention open cost reports, closed cost reports. It just discusses cost reports on or after 2001. All cost reports. So that is the rule that was in effect at the time. This is the effect of retroactivity. It's a powerful tool. The Supreme Court has said that retroactivity is not favored. Congress came in after that and gave the Secretary very limited authority to issue retroactive rules, understanding that it should be rare. And the Secretary did that and found both that retroactivity was necessary to comply with statutory requirements and that retroactivity was in the public interest. So the Secretary has changed the rules that were in effect at the time of these determinations. Under the reopening rule, that compels him to revise the cost reports because there's been an explicit notice and explicit direction. And am I right that in order for you to prevail on mandamus, then you have to show that it's absolutely clear, not just that the example seems to at least be in some tension with the thing of which it's an example and that CMS understood those legal provisions at the time, even though you'd have to conclude that they retroactively were deemed to have understood that at the time. But then it also have to get past the prohibition against a reopening where there's a change of legal interpretation made in response to a judicial president. You also have to be... So a couple of points about the prohibited reopenings, Your Honor. First, our position is that CMS did in fact issue a reopening. So we're certainly not arguing that that's prohibited. The Secretary is in the unusual position of arguing that his own actions are prohibited. That's certainly not our position. I think the Secretary's position is that they wouldn't have done that because it would have been prohibited. So the best way to read it is that they didn't mean to do something that would be prohibited. That may be their position. Our position is that they did in fact issue the reopening by issuing the explicit notice. And again, the retroactive nature of the rule means that there is no change in interpretation rendering a prohibited reopening. It's important to keep in mind the chronology of the reopening rule. In 1988, the Supreme Court said at Bowen v. Georgetown that there is no right to create retroactive rules under the Medicare program. And then Monmouth comes around. 2002, in response to Monmouth, the Secretary revises the reopening regulation. Then in 2003, Congress gives the authority to the Secretary to issue retroactive rules. So when the Secretary issued the 2002 reopening rule, there was no authority to issue retroactive regulations. So that could not have been contemplated as part of this rule. So our position is that within the plain language of the rule that the Secretary promulgated in 2002, the reopening rule, the retroactive nature of the rule that he promulgated later means that the Secretary has issued a reopening and it's not a prohibited reopening. I'm sure my colleagues don't have. You have a pretty cautious understanding of, was it fault or fraud and similar fault? It's a fraud and similar fault. Would that same understanding apply to claims that hospitals committed fraud or similar fault? Well, yes. So to be clear, Judge Walker, we are not contending that the Secretary committed fraud. We contend we have no reason to believe that he knew that his rule was unlawful. We contend that he committed similar fault because he reasonably should have known. If anyone in this country should understand what the Medicare statute requires, it's the Secretary of Health and Human Services who is appointed and confirmed by the Senate charged with administering that statute. There is a definition of similar fault that does not include intent. The very text of the similar fault regulation is new or reasonably should have known. So we contend that he reasonably should have known that the Secretary... I appreciate that and I was following that argument in the brief and I think you may have already answered this when to my first question. I just want to double, I mean, this line that stood out to me in your reply was the Medicare standard contains no knowledge requirement. You're talking about similar fault. The Medicare standard contains no knowledge requirement. Is that something that you want to live with when you're the one accused of fault? That's what the regulation says. It says no knowledge of wrongdoings, reasonably should have known. That's what the text says. Is that a yes? That's a yes. Could you run your answer to the prohibition again for me? Run that by again, please. The prohibited reopening? Yeah. Yes. So a couple of things. As I mentioned before, we're not arguing that it's a prohibited reopening. We're arguing that the Secretary did in fact issue a reopening. That's their argument that it's a prohibited reopening. And what's your answer to it? I'm sorry? And your answer to it? And our answer to it is that the retroactive rule means that this is not a change in interpretation. It's primary retroactivity changes past legal consequences of past actions. Thank you, counsel. We have a little time for rebuttal. Shams. May it please the court, Sophia Shams on behalf of the government. In 2022, CMS issued a revised regulation that revised its calculation for certain Medicare reimbursement determinations. And pursuant to its authority under section 405.1885C, it declined to apply this new regulation to closed payment determinations. Plaintiffs now ask this court to require CMS to reopen their closed payment determinations. But section 405.1885C does not impose any such duty. And it in fact expressly prohibits the exact reopening that plaintiffs seek here today. For this reason, we ask that the court affirm the district court's denial of mandamus. Can I ask you kind of the exact opposite question that I tried to ask of the other side, which is suppose that all we have is the example in the regulation and we didn't have the part that came before it. The better reading of the example that explicit notice was given? Sure. I think even if we just had the example, this particular example and not the prior regulations example, but this particular example, we still would argue the same thing that we're arguing with today, which is that the regulation that was revised at CMS issue did not constitute the kind of explicit notice that the example discusses. And that's particularly because of that secondary part of the example that your honor pointed out, which is inconsistent with the applicable law or regulations as CMS understood those legal provisions at the time that the termination or decision was rendered by the contractor. That secondary language at the time CMS understood those legal provisions was later added post Monmouth. And it's precisely to avoid the kind of decision that was rendered in Monmouth in which the court had determined that CMS didn't have this kind of discretion when it comes to reopening or directing reopening of a particular determination. So before we get to that part of the example, if we just talking about the very first part, which is a contractor determination must be reopened and revised if CMS provides explicit notice to the contractor that the contractor determination or contractor hearing decision is inconsistent with the applicable regulations, that part of it seems like it applies to this situation, given the... I think if all we had was that we didn't have the first part of CMS directed reopenings with MADirect and we did not have the second part of the provision, which is prohibited reopenings, that would be a situation that's a little bit closer to Monmouth and it would be a difficult, a more difficult argument for us to be making today. I do take the point of perhaps that part of the example on its own indicates a different meaning, but that's precisely why CMS revised the regulation because that was the prior regulation. The prior regulation just had shall be reopened if there's a determination that's contrary to the applicable law. And this court had interpreted that regulation in a way that CMS did not intend for it to interpret. And that's why CMS revised its regulation in 2002, stated that it was revising it in direct consequence of Monmouth, and then stated that it was revising it to express its longstanding interpretation that the secretary has discretion as to whether it's going to direct reopening. So I think looking at the example part of the example clause in a vacuum would be a mistake that disregards what CMS did in this case and in revising its regulation, which is why we asked the court to look at the first part of the regulation, subsection one, which states that CMS may direct. That provides an explicit indication of discretion on part of CMS that it did not invoke here. And then we also asked that the court look to the second part of the example clause, which talks about as CMS understood those regulations at the time the decision was rendered. And then even if we, you know, if the court still disagrees, we ask the court look to the second subsection of section 402.1885C, which expressly prohibits reopening when it's based on a change of interpretation or policy by CMS in a regulation, whether that be made in response to judicial precedent or otherwise. And that's exactly what we have in this case. We have is a case where the district court issued a decision that CMS's prior regulation for calculating FTE calculations was improper and against the statutory requirement. And so CMS revised the regulation, and it applied it retroactively to 2001, and it stated that it was prohibited from reopening prior determinations on that basis. So I think the text of the regulation is fairly clear. And I think I'll just also briefly address Judge Walker's argument. I think it's true that that the plaintiff's understanding of fault or similar fraud is a pretty capacious understanding, and that we should read those two, that phrase together. Our argument in brief is that similar fault requires some similar knowledge requirement as fault does, and that even if the court doesn't agree with that understanding, it's still a discretionary act by the secretary. The secretary may reopen if there's a finding of fraud or similar fault, so it wouldn't warrant mandamus here, which is pretty extraordinary relief. Does the similar fault question just go to the time limit, three-year time limit, if I'm remembering, or does it go to every? I think the similar fault question, I think plaintiffs invoke the similar fault question to argue that they should get reopening all the way back to 2001, and so I think you would only get to that question as the district court didn't get to that question because it answered that there was no entitlement to reopening in this case under 405.1885C. I don't think this court needs to answer the similar fault question if it determines that section 405.1885C doesn't require reopening. You gave a very clear answer to a very unclear question, so thank you. Of course. Well, if there are no other questions, then I'll be happy to sit back down, and we ask that you affirm the district court's denial of mandamus. Thank you. Mr. Connolly, we'll give you the two minutes you asked for for rebuttal. Thank you very much. A few points, Your Honor. The issue of explicit notice was brought up, and I just want to point out that the district court agreed that, quote, CMS gave explicit notice that prior determinations were based on a weighting formula inconsistent with the statute. The district court disagreed that that was an explicit direction, but I just want to point out that one part of the district court's opinion that we agree with is that there was explicit notice here. Monmouth was also mentioned, and Ms. Shams discussed how the Secretary revised the reopening regulation in response to Monmouth. I want to point out that this is not Monmouth. The reasoning of that opinion applies, but this is a different case in a couple of respects. One, in Monmouth, the Secretary did not admit that the prior interpretation was contrary to the statute, and the Secretary did not issue a retroactive rule in Monmouth. So the Secretary may have been trying to prevent a repeat of Monmouth when promulgating the 2000 rule. The Secretary may have succeeded. This is not Monmouth for the reasons I mentioned. Retroactive rule, and no admission by the Secretary that the prior determination was contrary to the statute. Similar fault was just discussed, and I just want to point out that the similar fault rule does not engraft an additional layer of discretion. Similar fault provision is a timeline that applies after the Secretary is given an explicit direction. So the Secretary has authority to give an explicit direction. We contend the Secretary did that. If you agree with that, then you look at the timelines, and the similar fault provision does not engraft another layer of discretion on top of that after the explicit direction has been issued. The rule has a part about reopening and a part about when not to reopen, and even if I could get pretty on board with your interpretation of the reopen section, why should we privilege the reopen section over the don't reopen section? I'm sorry, Your Honor, are you talking about the prohibited reopening when you refer to the don't reopen? So you should, I mean, they're both important clearly, but again, our contention is that the Secretary did reopen, and again, our position is that the retroactive rule means that this is not a change in legal interpretation. The Secretary changed the legal interpretation in effect in 2001 by altering the rule, changing past legal consequences of past actions. Thank you, counsel. Thank you to both counsel to take this case under submission.
judges: Srinivasan; Walker; Ginsburg